**ELIZABETH M. BARROS**
California Bar No. 227629
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467

Attorneys for Mr. Perez

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE IRMA E. GONZALEZ)**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 08CR1728-IEG |
| Plaintiff, | DATE: September 15, 2008<br>TIME: 2:00 p.m. |
| v. | **DEFENDANT'S NOTICE OF MOTIONS AND MOTIONS IN LIMINE TO:** |
| JESUS MANUEL PEREZ, | 1) EXCLUDE 404(b) OR 609 EVIDENCE; |
| Defendant. | 2) EXCLUDE STATEMENTS BY CO-DEFENDANT; |
| | 3) EXCLUDE TESTIMONY REGARDING MR. PEREZ'S DEMEANOR OR SILENCE; |
| | 4) EXCLUDE ALL EXPERT TESTIMONY PURSUANT TO RULE 16; |
| | 5) EXCLUDE EXPERT TESTIMONY ON THE STREET VALUE OF COCAINE; |
| | 6) EXCLUDE EXPERT TESTIMONY ABOUT THE STRUCTURE OF DRUG ORGANIZATIONS; |
| | 7) EXCLUDE ACTUAL BRICKS OF COCAINE FROM THE COURTROOM; |
| | 8) PREVENT A COPY OF THE INDICTMENT FROM BEING SUBMITTED DURING DELIBERATIONS; |
| | 9) EXCLUDE EVIDENCE OF "MUG SHOT" PHOTOS TAKEN AT THE BORDER OR TESTIMONY AS TO DEFENDANT'S APPEARANCE AT TIME OF ARREST; |
| | 10) DISCLOSE GRAND JURY TRANSCRIPTS; |
| | 11) PROVIDE A SEPARATE COPY OF THE JURY INSTRUCTIONS FOR EACH JUROR DURING DELIBERATIONS; AND |
| | 12) ALLOW ATTORNEY-CONDUCTED VOIR DIRE |

TO:    KAREN P. HEWITT, UNITED STATES ATTORNEY, AND
       ANNE PERRY, ASSISTANT UNITED STATES ATTORNEY:

    Jesus Manuel Perez, by and through his counsel, Elizabeth M. Barros, Federal Defenders of San

Diego, Inc., brings these motions in limine to:

    1)    Exclude 404(b) or 609 Evidence;

    2)    Exclude statements by co-defendant;

    3)    Exclude testimony regarding Mr. Perez's demeanor or silence;

    4)    Exclude all expert testimony pursuant to Rule 16;

    5)    Exclude expert testimony on the street value of cocaine;

    6)    Exclude expert testimony about the structure of drug organizations;

    7)    Exclude actual bricks of cocaine from the courtroom;

    8)    Prevent a copy of the indictment from being submitted during deliberations;

    9)    Exclude evidence of "mug shot" photographs taken at the border or testimony as to the
          defendant's appearance at the time of arrest;

    10)   Disclose grand jury transcripts;

    11)   Provide a separate copy of the jury instructions for each juror during deliberations; and

    12)   Allow attorney-conducted voir dire

    Mr. Perez brings these motions pursuant to the Fourth, Fifth and Sixth Amendments to the United

States Constitution, Fed. R. Crim. P. 12, 16 and 26, and all other applicable statutes, case law and local rules.

These motions are based on the attached statement of facts and memorandum of points and authorities.

                                        Respectfully submitted,


                                        /s/ Elizabeth M. Barros
Dated: August 29, 2008                  **ELIZABETH M. BARROS**
                                        Federal Defenders of San Diego, Inc.
                                        Attorneys for Mr. Perez

**ELIZABETH M. BARROS**
California Bar No. 227629
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California  92101-5030
Telephone:  (619) 234-8467

Attorneys for Mr. Perez

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE IRMA E. GONZALEZ)**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 08CR1728-IEG |
| Plaintiff, | DATE: September 15, 2008<br>TIME:  2:00 p.m. |
| v. | |
| JESUS MANUEL PEREZ, | MEMORANDUM OF POINTS AND<br>AUTHORITIES IN SUPPORT OF<br>DEFENDANT'S MOTIONS IN LIMINE |
| Defendant. | |

**I.**

**STATEMENT OF FACTS[1]**

On May 14, 2008, Mr. Perez was arrested at the Calexico West Port of entry after agents found cocaine hidden in a non-factory compartment inside the vehicle he was driving.  Jose Gonzalez-Perales accompanied Mr. Perez as a passenger in the vehicle.  Mr. Perez was the registered owner of the vehicle.  Both defendants made statements.

Mr. Perez was previously arrested on December 15, 2006 for importation of marijuana.  On August 25, 2008, the government indicated in a pleading that it "intends to seek admission of the defendant's December 15, 2006 conduct as evidence of 'other acts' in accordance with Rule 404(b) . . ." PACER, Doc.

---

[1]   This statement of facts is taken from the criminal complaint and discovery provided by the government.  Mr. Perez does not adopt these facts and reserves the right to challenge these facts at any future proceeding.

25, p. 9.  Although the government has produced the complaint and judgment and conviction document for the 2006 offense, the government has not previously produced any of the discovery.  The only reports available to Mr. Perez are the reports attached to the *Government's Response in Opposition to Defendant's Motion to Suppress Statements*.  PACER, Doc. 25.  However, only page 3 of the report of investigation from that incident is attached.  Therefore, counsel does not have any other information regarding the facts of that case, such as where the drugs were concealed.

## II.

## MOTIONS

### 1.    Exclude 404(b) and 609 Evidence.

Federal Rule of Evidence 404(b) requires that the government provide "reasonable notice in advance of trial" of any evidence of "other crimes, wrongs, or acts" it plans to introduce.  FRE 404(b).  The notice requirement is triggered when timely requested by the defendant.  United States v. Vega, 188 F.3d 1150, 1154 (9th Cir. 1999).

Proper notice has not been given in this case despite a timely request by the defense in pretrial motions.  The only notice provided by the government was in a pleading filed August 25, 2008, in which the government states that it "intends to seek admission of the defendant's December 15, 2006 conduct as evidence of 'other acts' in accordance with Rule 404(b) . . ." PACER, Doc. 25, p. 9.  Not only did the government fail to provide *reasonable* notice in advance of trial, the content of this notice is insufficient.

The use of evidence pursuant to Rule 404(b) must be narrowly circumscribed and limited and may not be introduced unless the government establishes its relevance to an actual issue in the case.  See United States v. Garcia-Orozco, 997 F.2d 1302, 1304 (9th Cir. 1993).  In order to demonstrate that evidence of Mr. Perez's prior acts are relevant for Rule 404(b) purposes, the government must articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the prior acts evidence.  See United States v. Mayans, 17 F. 3d 1174, 1181.  If the government's theory is one of knowledge (the only actual issue in this case), then the government must also prove a logical connection between the knowledge gained as a result of the prior acts and the knowledge at issue in the charged act.  Id. at 1181-82.  Similarity is necessary to indicate knowledge and intent.  Id. at 1182.  The government's notice fails to state the logical connection between the knowledge gained as a result of the prior acts and the present charge.  Therefore, the Court should

1  exclude any evidence pursuant to Rule 404(b) on grounds of insufficient notice. See United States v. Vega,

2  188 F.3d 1150, 1154 (9th Cir. 1999).

3  **2.     Exclude Statement's By Co-Defendant Law or Sever Defendants.**

4        Pursuant to Crawford v. Washington, 541 U.S. 36 (2004), this Court should suppress the statements

5  of all unavailable witnesses, including the statements given by co-defendant Jose Gonzales-Perales.  As the

6  1966 Advisory Committee Note to Fed. R. Evid. 14 indicates:

7            A defendant may be prejudiced by the admission in evidence against a co-defendant
             of a statement or confession made by that co-defendant.  This prejudice cannot be
8            dispelled by cross-examination if the co-defendant does not take the stand.  Limiting
             instructions to the jury may not in fact erase the prejudice . . .
9

10  A few years after the 1966 Amendment to Rule 14, the Supreme Court decided Bruton v. United States, 391

11  U.S. 123 (1968).  The Court clearly held that admission of a co-defendant's statement at trial implicating the

12  defendant violated the defendant's Sixth Amendment right to confront and cross-examine witnesses.  Id. at

13  126.  Quoting the dissent in Delli Paoli v. United States, 352 U.S. 232, 247-248 (1957), the Court emphasized:

14            The fact of the matter is that too often such admonition against misuse is intrinsically
             ineffective in that the effect of such a nonadmissible declaration cannot be wiped from
15            the brains of the jurors. The admonition therefore becomes a futile collocation of
             words and fails of its purpose as a legal protection to defendants against whom such
16            a declaration should not tell. . . The Government should not have the windfall of
             having the jury be influenced by evidence against a defendant which, as a matter of
17            law, they should not consider but which they cannot put out of their minds.

18  Id. at 129 (quotations omitted).  Therefore, the Supreme Court reversed, even though the trial court gave a

19  clear instruction that the confession could not be used against the defendant.  Id. at 137.

20        Here, it is anticipated that the government may attempt to introduce defendant Gonzales-Perales'

21  statements at trial.  Unless Mr. Gonzales testifies, the admission of his statements would violate Mr. Perez's

22  Sixth Amendment right to confront and cross-examine the witnesses against him.  As the Supreme Court

23  made clear in Bruton, as well as the 1966 Committee Note to Rule 14, a limiting instruction cannot effectively

24  eliminate the prejudice to Mr. Perez.  Therefore, this Court should suppress Mr. Perez's statements or sever

25  the defendants' trials to protect Mr. Perez's constitutional rights.

26  //

27  //

28  //

1    **3.     Exclude Testimony Regarding Mr. Perez's Demeanor or Silence.**

2         **A.     Such Testimony Should Be Precluded Under Federal Rule of Evidence 403**
              **and the Fifth Amendment.**

3

4         Counsel anticipates that the agents will testify that Mr. Perez was acting nervous and that his hands

5    were shaking.  Moreover, agents often attempt to testify that a defendant's body language indicated an

6    "unwillingness to cooperate," or that the defendant stood silent or expressionless in the face of questions or

7    comments.  Mr. Perez respectfully requests a motion in limine prohibiting the government from eliciting any

8    testimony that Mr. Perez was nervous or that his body language indicated an unwillingness to cooperate or

9    that he was silent or expressionless.

10        Absent some prior knowledge of the defendant, lay witness testimony regarding a defendant's

11   demeanor has minimal, if any, relevance.  United States v. Wald, 216 F.3d 1222, 1227 (10th Cir.2000) (*en*

12   *banc*) (evidence of nervousness "is of limited significance"[,] "particularly when [the agent] had no prior

13   acquaintance with the [defendant]."); United States v. Fernandez, 18 F.3d 874, 879 (10th Cir.1994) ("We have

14   repeatedly held that nervousness is of limited significance in determining reasonable suspicion and that the

15   government's repetitive reliance on the nervousness  . . . must be treated with caution"); see also Gall v.

16   Parker, 231 F.3d 265, 292 (6th Cir. 2000) (testimony that Gall seemed "nice [and] normal" and was "not

17   nervous"error because -- "we have long been skeptical of such lay testimony"); United States v. Burks, 547

18   F.2d 968, 970 (6th Cir.1977) (stating that lay testimony that defendant did not appear "abnormal" by persons

19   "who had very limited opportunity to observe" him had little value), rev'd on other grounds, 437 U.S. 1, 98

20   S.Ct. 2141 (1978); United States v. Smith, 437 F.2d 538, 540-41 (6th Cir. 1970) (lay testimony as to mental

21   state lacks probative value when a witness's "direct knowledge of the defendant is brief and superficial.").[2]

22        In reversing a trial court's decision, the Tenth Circuit, in Fernandez expressly notes, that: "[t]he lower

23   court's heavy reliance on nervousness as an important factor establishing reasonable suspicion is even more

24

---

25        [2]  In both Gall and Smith, mental state was the defense, and it was deemed error to have
26   lay witnesses, without prior knowledge of the defendant opine that he appeared "not nervous,"
     Gall, 231 F.3d at 292, or that "he did not appear abnormal," Smith, 437 F.2d at 540.  Similarly,
27   here, where a distinct mental state (knowledge), is the determinative issue, permitting witnesses
     without expertise and with no prior knowledge of Mr. Perez to testify regarding their
28   interpretations of his demeanor is equally erroneous.

1  troublesome given the complete lack of evidence in the record that [the police officer] had any prior

2  knowledge of Fernandez . . . ." 18 F.3d at 879.

3      These cases demonstrate that courts place little to no weight upon demeanor in making particular fact-

4  based rulings under the lesser burdens of proof than the beyond a reasonable doubt standard applicable at trial.

5  See, e.g., United States v. Chavez-Valenzuela, 268 F.3d 719 (9th Cir. 2001) ("[N]ervousness during a traffic

6  stop -- even  . . . extreme nervousness . . . . . . in the absence of other particularized, objective factors, does

7  not support a reasonable suspicion of criminal activity . . . ."). For example, in Chavez-Valenzuela, Wald and

8  Fernandez, nervousness was considered to be of little to no probative value in a probable cause/reasonable

9  suspicion context where evidentiary standards are relaxed and where there is no need to consider the

10  prejudicial impact of such evidence. Id.; Wald, 216 F.3d at 1227; Fernandez, 18 F.3d at 879.

11      The reasoning underlying the minimal significance accorded to a person's demeanor, is that courts

12  recognize that there are both innocent and guilty explanations for a person's demeanor. For example, people

13  confronted with law enforcement often exhibit signs of nervousness, without having done anything wrong.

14  See, e.g., Chavez-Valenzuela, 268 F.3d at 725 ("Encounters with police are necessarily stressful for law-

15  abiders and criminals alike"); United States v. Fuentes-Cariaga, 209 F.3d 1140, 1142 (9th Cir. 2000)

16  (recognizing that "drivers stopped at the border (or anywhere else) can be nervous for many reasons, one being

17  a natural unease when confronted by an authority figure and another being fear of getting caught with

18  contraband the person knows he is carrying"); accord Wald, 208 F.3d at 907 (it is not uncommon for most

19  citizens, even innocent ones, to exhibit signs of "innocuous" nervousness when confronted by a law

20  enforcement); United States v. Wood, 106 F.3d 942, 947 (10th Cir. 1997) ("It is certainly not uncommon for

21  most citizens--whether innocent or guilty--to exhibit signs of nervousness when confronted by law

22  enforcement officer."); Fernandez, 18 F.3d at 879 (same); United States v. Diaz-Carreon, 915 F.2d 951, 954

23  (5th Cir. 1990 ("Nervousness, however, is 'a normal reaction to circumstances which one does not understand.

24  In the absence of facts which suggest that the defendant's nervousness or anxiety derives from an underlying

25  consciousness of criminal behavior, evidence of nervousness is insufficient to support a finding of guilty

26  //

27  //

28  //

knowledge");[3] United States v. Millan-Diaz, 975 F.2d 720, 722 (10th Cir.1992) (same); United States v. Grant, 920 F.2d 376, 386 (6th Cir. 1990)("[n]ervousness is entirely consistent with innocent behavior, especially at an airport where a traveler may be anticipating a long- awaited rendezvous with friends or family"); United States v. Andrews, 600 F.2d 563, 566, n. 4 (6th Cir.1979) (noting inconsistent rationales taken by government in explaining nervousness).

In determining what can properly be considered in making reasonable suspicion/probable cause determinations, it is improper for district courts to rely upon factors which lead to a "heads I win, tails you lose" result for the prosecution.  Gonzalez-Rivera v. INS, 22 F.3d 1441, 1447 (9th Cir. 1994) (noting that point with respect to a driver's avoidance of eye contact with law enforcement the government argues that whether the driver made eye contact or avoided it both are signs of guilt); see also United States v. Lopez, 564 F.2d 710 (5th Cir. 1977)(where a factor and its opposite can both be used to justify a stop, the court should not give weight to either factor.).  Nervousness is precisely such a factor as recognized by the court in Andrews, 600 F.2d at 566, n. 4, where it discussed the fact that the government argues in some cases that "nervousness" indicates guilty knowledge while in others that its absence indicates the guilty knowledge of the calm and collected criminal.  Since it is inappropriate for courts to consider such a factor in a mere probable cause calculus, concomitantly, a jury should not consider it at a far more important event, such as a trial[4].  Indeed, //

---

[3]  In Diaz-Carreon, the Fifth Circuit held that the "nervousness" was linked to consciousness of guilt but only because there, "*before being told that agents had discovered marijuana in the pickup truck,* Diaz-Carreon volunteered, 'If the truck is loaded, I didn't know about it.'" 915 F.2d at 954 (emphasis in original).  Here, no such link between any amorphous "nervous" behavior and consciousness of guilt exists.

[4]  In the suppression context, courts are precluded from considering certain factors and as a matter of law, cannot rely upon them in finding probable cause or reasonable suspicion, such as race or ethnicity, United States v. Montero-Camargo, 208 F.3d 1122, 1131-32 (9th Cir.2000) (en banc).  Because of its limited probative value and the equivalent "guilty" and "innocent," explanation, courts indicate that "nervousness"also, should be accorded little to no consideration.  While a factor such as race is not permitted to be the subject of testimony indicating guilty knowledge at a trial for other reasons, one such reason, *i.e,* that it has no relevance for purposes of ascertaining guilty knowledge, applies equally to demeanor evidence.  Just as race would not be a permissible subject of testimony at trial, testimony about an individual's demeanor should not be admitted either.

we expect our judges to be able to put aside undue prejudice when the law recognizes that jurors cannot do the same.

Jurors will assign undue weight to a law enforcement officer's testimony that an individual was "nervous" and equate nervous behavior with suspicious behavior.  See e.g.,  United States v. Gutierrez, 995 F.2d 169, 172 (9th Cir.1993) (testimony of law enforcement officers "'often carries an aura of special reliability and trustworthiness,'") (quoting United States v. Espinosa, 827 F.2d 604, 613 (9th Cir.1987)).  It is also true that, as is previously recognized, testimony that someone is "nervous" in the presence of law enforcement, is ambiguous.  For these reasons, evidence that someone was "nervous" should fall in the same category as evidence that an individual remained silent when confronted with law enforcement accusation.

Demeanor evidence also touches upon a defendant's constitutional right to remain silent.  It is well established that the Fifth Amendment right to remain silent carries an implicit assurance that silence will carry no penalty.  See Doyle v. Ohio, 426 U.S. 610, 619-20 (1976)(comment on post-arrest, post-Miranda silence inadmissible under the Fifth Amendment); see also Guam v. Veloria, 136 F.3d 648, 652 (9th Cir.1998) (same).

In United States v. Velarde-Gomez, 269 F.3d 1023 (9th Cir. 2001), for example, the district court permitted the government to admit a police officer's testimony about the defendant's lack of physical or emotional reaction when confronted with a large amount of marijuana in gas tank of his vehicle.  On appeal, the Ninth Circuit held that the government may not use evidence of a defendant's demeanor at trial, for impeachment or during its case-in-chief, because such evidence penalizes the exercise of a constitutional right.  Id. at 1032.  The Court reasoned that there was no meaningful distinction between the "demeanor" evidence at issue and the "silence" the Court previously held inadmissible in United States v. Whitehead, 200 F.3d 634 (9th Cir. 2000).  Velarde-Gomez, 269 F.3d at 1025, 1030-31.

Apart from any constitutional protection, evidence of a person's silence is also inadmissible pursuant to Federal Rule of Evidence 403.  United States v. Hale, 422 U.S. 171 (1975).  Thus, any slight probative value which could exist is insufficient to justify its admission.  All told, any proposed testimony that Mr. Perez displayed signs of nervousness or that he remained silent or expressionless, is irrelevant to the issue at hand and should be excluded under Federal Rule of Evidence 403 as being substantially more prejudicial than probative.

**B.    Admission of Testimony Regarding Mr. Perez's Demeanor Violates Rules 701 & 704(b)**

Finally, such evidence should be excluded if it is couched in terms of a law enforcement witness' personal opinion about Mr. Perez's behavior. The agent's personal opinion is irrelevant and such opinion testimony based on no prior knowledge of the defendant and upon a very limited observation opportunity, violates Fed. R. Evid. 701. Rule 701 provides that a lay witness can only testify to opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or to the determination of a fact in issue and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. In <u>Gonzalez-Rivera v. INS</u>, 22 F.3d 1441 (9th Cir. 1994), this Circuit held that an INS agent's testimony at a suppression hearing that an individual was nervous must be disregarded because it was not based upon "reliable, objective evidence." <u>Id.</u> at 1447. There, when explored, the basis for the agent's testimony was that the individual appeared to have a "dry mouth." The court stated that absent reliable, objective testimony that people who are nervous have a dry mouth, as opposed to just being thirsty, this inference was nothing more than "subjective feelings [which] do[] not provide any rational basis for separating out the illegal aliens from the American citizens and legal aliens." <u>Id.</u> Likewise, any testimony regarding Mr. Perez's demeanor based on the officers' subjective judgment and no prior knowledge of him should not be considered by the jury.

**4.    All Expert Witnesses Offered Without Appropriate Notice to Mr. Perez Violate Federal Rules of Criminal Procedure 16(a)(1)(E) And Must Be Excluded.**

Federal Rule of Criminal Procedure 16(a)(1)(E) mandates that "[a]t the defendant's request, the government shall disclose to the defendant a written summary of testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case in chief at trial . . . . The summary provided under this subdivision shall describe the witnesses' opinions, the bases and the reasons for those opinions, and the witnesses' qualifications." The obligation to provide this material is ongoing, continuing prior to and during trial. <u>Fed. R. Crim. P. 16(c)</u>. When a party fails to comply with the discovery rules set forth in Rule 16, exclusion is a proper remedy. <u>Fed. R. Crim. P. 16(d)(2)</u>. <u>See also</u> Advisory Committee Notes to 1997 Amendment (asserting that "[u]nder rule 16(a)(1)(E), as amended in 1993, the defense is <u>entitled</u> to disclosure of certain information about expert witnesses which the government intends to call during the trial" (emphasis provided.).

On June 23, 2008, Mr. Perez filed pretrial motions requesting notice of any expert witnesses that the government intends to call at trial. At the last motion hearing, the government indicated that discovery in this matter was complete. However, thus far, the government has given no notice of any expert witness testimony. Therefore, Mr. Perez respectfully requests that this Court grant a motion in limine excluding such testimony, to give effect to the discovery requirements of Rule 16, and to afford the accused the opportunity to prepare his defense in this case.

**5.    Any Proposed Expert Testimony Addressing the Street Value of Cocaine Must Be Excluded.**

**A.    Any Testimony Asserting that Mr. Perez Must Have Possessed Knowledge of the Cocaine in the Vehicle Because of its Supposed Street Value Violates Fed. R. Evid. 704 and Must be Excluded.**

Federal Rule of Evidence 704 provides:

> No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

Fed. R. Evid. 704. Ninth Circuit case law does not limit this rule to psychiatric witnesses; rather, it applies any time an expert seeks to opine on a defendant's knowledge, willfulness, or other mental state. See United States v. Morales, 108 F.3d 1031, 1036 (9th Cir. 1997) ("[t]he language of Rule 704(b) is perfectly plain. It does not limit its reach to psychiatrists and other mental health experts. Its reach extends to all expert witnesses"); United States v. Webb, 115 F.3d 722 (9th Cir. 1997) (holding it impermissible under Fed. R. Evid. 704(b) for expert to testify, even in hypothetical form, whether defendant knew of weapons concealed in car.).

Any proposed expert who would opine -- directly or indirectly -- that Mr. Perez must have known that the vehicle contained cocaine testifies as to his mental processes or condition. Whatever the form, the government may not use the trappings of "expertise" to bolster speculation on Mr. Perez's alleged knowledge. This testimony is expressly forbidden by Fed. R. Evid, 704 and by Ninth Circuit law. Accordingly, an order in limine must be granted excluding this testimony.

**B.    Rule 403 Prohibits Street Value Testimony in Any Event.**

Even assuming that this testimony were otherwise admissible, expert testimony on the street value of cocaine at trial should be excluded under Fed. R. Evid. 403. The government typically argues that this

1  testimony is relevant because drug trafficking organizations would not entrust this "valuable commodity" to

2  an unknowing person.  Several problems exist with this argument.  First, there is absolutely no evidence that

3  any vast drug trafficking organization exists in this case: the government's argument rests on facts that are

4  not, and will not, be in evidence.  Second, this reasoning rests on rank speculation as to the mental processes

5  of unknown persons.  The government cannot simply proffer evidence on what these vague and unknown

6  "drug traffickers" would or would not do in a given situation.  There is virtually no probative value in this

7  proposed testimony.

8       In contrast, this testimony will result in substantial prejudice to Mr. Perez.  The sheer monetary value

9  of this cocaine could inflame the passions of the jury, and distract them from the issue of knowledge -- the

10  true issue in this case.  The amount of money at stake could well suggest that a vast drug empire is implicated

11  here; indeed, this inference is a key premise in the government's relevance argument.  This insinuation,

12  however, has absolutely no evidentiary support.  Beyond the government's attenuated and factually

13  unsupported argument that the value of these drugs demonstrates the defendant's knowledge, absolutely no

14  probative value exists in this testimony.  The prejudice, in contrast, is extreme.  This testimony should

15  therefore be independently excluded under Fed. R. Evid. 403.

16  **6.    This Court Should Exclude Any Expert Testimony Describing the Structure of Supposed Drug Smuggling Organizations, as it Is Irrelevant, Improper under Fed. R. Evid 702 and 703, and Unduly Prejudicial under Fed. R. Evid 403.**

17

18       Under this Circuit's precedent United States v. Vallejo, 237 F.3d 1008 (9th Cir. 2001), and United

19  States v. McGowan, 274 F.3d 1251 (9th Cir. 2001), structure testimony may not be permitted in this trial.

20  This sort of "expert" testimony not only fails the balancing test set forth by Fed. R. Evid. 403, but also is

21  literally irrelevant and an abuse of discretion under Fed. R. Evid. 401.  Vallejo 237 F.3d at 1017.  The same

22  problem exists with any organizational structure evidence in this case.  The government has not charged Mr.

23  Perez with conspiracy.  Any attempt to connect Mr. Perez to a vast drug empire that has not been alleged

24  violates Fed. R. Evid. 401, 403, and Ninth Circuit case law.  A motion in limine excluding such evidence

25  should be granted accordingly.

26  //

27  //

28  //

**7.    The Presence of Cocaine in the Courtroom Is Highly Prejudicial, Minimally Probative at Best, and Thus Properly Excluded under Fed. R. Evid. 403.**

At trial, the government may insist on presenting the actual bricks of cocaine seized to the jury. In this particular case, in which Mr. Perez's knowledge of the drugs is the only contested issue, this evidence is highly inflammatory yet has virtually no probative value as to any fact in dispute.  It must be excluded under Fed. R. Evid. 403.

Fed. R. Evid. 403 asserts that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Presentation of the cocaine seized in this case to the jury runs afoul of this evidentiary rule.

It is feared that the government may attempt to inflame the passions of the jury through gratuitous display of the cocaine seized in this case.  Because the fact that cocaine was seized is undisputed in this case, there is simply no reason to bring this physical evidence into the courtroom.  This lack of probative value, however, stands in contrast to the highly prejudicial nature of this contraband.  Many jurors will no doubt be scandalized by the sheer volume of drugs involved in this case.  In sum, this evidence proves no issue that is in dispute, yet threatens to badly prejudice Mr. Perez.  For these reasons, Mr. Perez respectfully requests that this evidence be excluded from trial.

**8.    The Court Should Not Send the Indictment into the Jury Room During Deliberations.**

Neither the Federal Rules of Criminal Procedure nor case law require sending a copy of the indictment to the jury room because the indictment is not evidence.  In fact, should this Court allow a copy of the indictment to be sent to the jury room, it should caution the jury that the indictment is not evidence.  See United States v. Utz , 886 F.2d 1148, 1151-52 (9th Cir. 1989).

Mr. Perez urges this Court to not to send the indictment into the jury room.  The language in the instant indictment mirrors the language of the charged statutes.  Accordingly, jurors could be improperly persuaded by the similarities between the indictment allegations and the elements of the crime. Because the indictment is not evidence, but could potentially be mistaken for such, this document should not be permitted into the jury room during deliberations.

//

1  **9.    Introduction of "Mug Shots" of Mr. Perez Taken at the Border or Other Testimony as
2  to His Appearance at the Time of Arrest Would Be Highly Prejudicial Without Adding
    Any Probative Value to this Trial, Thus Meriting Exclusion under Fed. R. Evid. 403.**

3       "Mug shot"-style pictures of Mr. Perez taken while he was in custody have no place at this trial.  This

4  is not an identity case: Mr. Perez does not dispute that he is one of the individuals arrested at the border.

5  Accordingly, these pictures have no probative value.  In contrast, however, their appearance automatically puts

6  one in mind of a criminal, and is not unlike forcing a defendant to wear jail-issued clothing while in trial.

7  Similarly, prosecutors sometimes elicit from witnesses prejudicial testimony regarding the appearance of

8  defendants at the time of their arrest.  For example, in one trial, an officer testified that he recognized the

9  defendant, but the defendant was not as "clean cut" on the day of his arrest.  The introduction of mug shots

10 or similar testimony is highly prejudicial and devoid of probative value and should be excluded  under Fed.

11 R. Evid. 403.  Moreover, the prosecutor should be asked to admonish her witnesses not to interject such

12 irrelevant and prejudicial testimony into the trial.

13 **10.    Disclose Grand Jury Transcripts.**

14      The Court should make Grand Jury transcripts available when the defense can show a particularized

15 need.  The particularized need present in this case is that at least one witness who testified before the Grand

16 Jury may testify at the trial of Mr. Perez.  The government must produce a transcript of a witness's testimony

17 before the Grand Jury following the direct examination of the witness at trial.  18 U.S.C. § 3500; <u>Dennis v.</u>

18 <u>United States</u>, 384 U.S. 855 (1966); Fed. R. Crim. P. 26.2(f)(3).  The defense requests that the government

19 make such transcripts available in advance of trial to facilitate the orderly presentation of evidence and to

20 remove any need for a recess in the proceedings for defense counsel to examine the statement pursuant to Fed.

21 R. Crim. P. 26.2(d).

22 **11.    Provide a Separate Copy of the Jury Instructions for Each Juror During Deliberations.**

23      Juries consist of lay people who are required to follow the law.  Their responsibility becomes more

24 difficult when all twelve jurors have access to only one copy of instructions.  Often each juror does not have

25 an opportunity to even read or understand the critical instructions.  Consequently, jurors fail to understand

26 the government's burden of proving a case beyond a reasonable doubt.

27      In this case, there are *specific* elements the government must prove in order to convict Mr. Perez of

28 the crimes alleged.  The Court will instruct the jury on each of these elements.  However, in order for the jury

1   to properly, effectively, and efficiently perform its function of determining whether the government has

2   proven <u>each</u> element beyond a reasonable doubt, each juror also should be provided a written copy of the jury

3   instructions.[5]

4   **12.    <u>Allow Attorney-Conducted Voir Dire the Jury</u>.**

5          Pursuant to Fed. R. Crim. P. 24(a), to provide effective assistance of counsel and to exercise

6   Mr. Perez's right to trial by an impartial jury, defense counsel requests the opportunity to personally <u>voir</u> <u>dire</u>

7   the prospective members of the jury.  Mr. Perez is not asking for hours of the Court's time; rather, he is

8   requesting a discreet opportunity to inquire into important issues that commonly arise in such a case.

9                                                **III.**

10                                        **<u>CONCLUSION</u>**

11         For the foregoing reasons, Mr. Perez respectfully requests that this Court grant these motions in limine,

12  as well as these other motions for trial.

13                                          Respectfully submitted,

14

15  Dated: August 29, 2008                    /s/ Elizabeth M. Barros
                                              **ELIZABETH M. BARROS**
16                                            Federal Defenders of San Diego, Inc.
                                              Attorneys for Mr. Perez

17

18

19

20

21

22

23

24

25

26

27

28

[5] Mr. Perez is willing to pay the costs for the additional copies of the jury instructions.

1 | **ELIZABETH M. BARROS**
California State Bar No. 227629
2 | **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
3 | San Diego, CA 92101-5008
(619) 234-8467/Fax: (619) 687-2666
4 | E-Mail: elizabeth_barros@fd.org

5 | Attorneys for Jesus Manuel Perez

6

7

8 | UNITED STATES DISTRICT COURT

9 | SOUTHERN DISTRICT OF CALIFORNIA

10 | **(HONORABLE IRMA E. GONZALEZ)**

11 | UNITED STATES OF AMERICA,                )    Case No. 08CR1728-IEG-01
                                                              )
12 |                          Plaintiff,         )
                                                              )
13 | v.                                             )    **CERTIFICATE OF SERVICE**
                                                              )
14 | JESUS MANUEL PEREZ,                   )
                                                              )
15 |                          Defendant.        )
    _____ )

16

17 | Counsel for Defendant certifies that a copy of the foregoing document has been served this day upon:

18 | Jack J. Boltax
      jbefile@gmail.com,jboltaxlaw@gmail.com; and
19

20 | Anne Kristina Perry
      Anne.Perry2@usdoj.gov,Cindy.Muncy@usdoj.gov,efile.dkt.gc1@usdoj.gov

21 | Respectfully submitted,

22

23 | DATED:        August 29, 2008              /s/ Elizabeth M. Barros
                                                                  **ELIZABETH M. BARROS**
24 |                                                            Federal Defenders of San Diego, Inc.
                                                                  Attorneys for Jesus Manuel Perez
25

26

27

28